IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| MCKNIGHT CONSTRUCTION COMPANY, INC., | : |
| Plaintiff, | : |
| v. | : CASE NO.: 7:24-CV-112 (LAG) |
| SURECRETE, LLC and FRONTIER BONDING SERVICES, LLC d/b/a THE SURETY GROUP AGENCY f/k/a LEXON INSURANCE COMPANY, | : |
| Defendants. | : |

# ORDER

Before the Court is Defendant Lexon Insurance Company's Motion to Dismiss. (Doc. 14). For the reasons below, Defendant's Motion is **GRANTED**.

## BACKGROUND

The dispute in this case arises from a contract between Plaintiff McKnight Construction Company Inc., and the United States Army Corps of Engineers (USACE) and a related subcontract with Defendant SureCrete LLC (SureCrete).[1] (Doc. 5 ¶¶ 1, 8). Defendant Lexon Insurance Company (Lexon) acted as the Surety on a related performance bond. (*Id.* ¶ 10). On or about September 2020, USACE issued a Request for Proposal for constructing a combined hangar/HMU facility and aircraft parts store at Moody AFB (the Project). (*Id.* ¶ 6). Plaintiff bid on and received the contract award for $23,606,712.00. (*Id.* ¶ 7). On October 13, 2020, Plaintiff, as the general contractor, awarded a subcontract to Defendant SureCrete. (*Id.* ¶¶ 1, 8; Doc. 5-1). On March 1, 2021, the subcontract was fully executed for $3,405,000.00. (Doc. 5 ¶ 8). During performance, Plaintiff issued additional

---

[1] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all facts alleged in Plaintiff's Amended Complaint (Doc. 5) as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Anderson v. Wilco Life Ins.*, 17 F.4th 1339, 1344 (11th Cir. 2021) (citation omitted).

orders to Defendant SureCrete, "increasing the subcontract value to $6,248,383.82." (*Id.* ¶ 13). The scope of Defendant SureCrete's work included "demolition, erosion control, site utilities (water/sewer/storm), asphalt paving and stone, concrete paving and stone, and building concrete including stone." (*Id.* ¶ 9). The contract between Plaintiff and Defendant SureCrete required Defendant SureCrete to "provide payment and performance bonds for the Project[,]" and Defendant Lexon "provided Performance Bond No. LICX1166556 for $3,335,000.00." (*Id.* ¶ 10; Doc. 5-2). The Performance Bond provides, in pertinent part,

> Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after a declaration of Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligation under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

(Doc. 5-2 at 4 ¶ 11).

The subcontract "detailed the default termination procedure[.]" (Doc. 5 ¶ 12). In the event of a default, Plaintiff could complete the work at Defendant SureCrete's expense and "would receive its actual costs plus 15% as overhead and profit." (*Id.*). Article 6.1 of the subcontract provides, in relevant part:

> Except as otherwise provided in the Subcontract, in the event that [Defendant SureCrete] fails to comply[] . . . with the provisions herein as to character or time of performance, and the failure is not corrected within 24 hours after written notice by [Plaintiff] to [Defendant SureCrete], [Plaintiff], may, without prejudice to any other right or remedy against [Defendant SureCrete] or its surety, [Defendant Lexon,] take over and complete the performance of this Subcontract, or any part of it, at the expense of [Defendant SureCrete], or without taking over the work, may furnish the necessary materials and/or employ the workmen necessary to remedy the situation at the expense of [Defendant SureCrete].

(Doc. 5-1 at 20).

2

Plaintiff alleges that during performance, Defendant SureCrete breached the subcontract by failing to "complete approved submittals, . . . complete daily reports, . . . maintain certified payroll records, . . . provide compliant materials, . . . properly manage the Project to advance the work, . . . provide qualified superintendents and quality controls, and . . . maintain a schedule." (Doc. 5 ¶¶ 14, 15). Because Defendant SureCrete was not paying its vendors, vendors delayed or refused performance, and Plaintiff decided to pay Defendant SureCrete's vendors directly to continue advancing the Project. (*Id.* ¶¶ 16–17). On July 29, 2022, Plaintiff provided notice of the deficiencies to Defendant SureCrete and requested that it "cure and resolve the issues." (*Id.* ¶ 18). When Defendant SureCrete failed to do so, Plaintiff terminated Defendant SureCrete on October 25, 2022, for default pursuant to Article 6.1 of the subcontract. (*Id.* ¶ 19; Doc. 5-3; *see* Doc. 5-1 at 20). That same day, Plaintiff sent a Bond demand to Defendant Lexon, notifying Defendant Lexon that Defendant SureCrete was terminated and demanding that Defendant Lexon complete Defendant SureCrete's remaining scope of work. (Doc. 5 ¶ 20; Doc. 5-4). Plaintiff did not receive a substantive response to its Performance Bond demand. (Doc. 5 ¶ 21).

As of October 25, 2022, Plaintiff had paid Defendant SureCrete $3,687,491.82 for the work completed. (*Id.* ¶ 22). Plaintiff paid an additional $3,584,619.82 to Defendant SureCrete's former subcontractors to continue the work. (*Id.* ¶¶ 23, 27). The total cost to complete the Project with the contractual overhead, minus the balance of funds, resulted in completion costs of $5,019,887,52, not including additional project management time, supervision, and delays. (*Id.* ¶¶ 25–26). Plaintiff alleges that Defendant Lexon, "as the surety, was obligated to either complete the work, obtain bids for completion secured by the bonds, or pay [Plaintiff] the amounts over the contract balance." (*Id.* ¶ 35). Plaintiff further alleges that Defendant "Lexon failed and refused to provide a timely response to [Plaintiff's] termination notice, default notice, and demand for performance." (*Id.* ¶ 36). Thus, Plaintiff maintains that Defendant Lexon is "in breach of the performance bond requirements[.]" (*Id.* ¶ 38).

On October 24, 2024, Plaintiff filed an initial complaint against Defendant SureCrete and Defendant Lexon. (Doc. 1). On November 21, 2024, Plaintiff filed an

3

Amended Complaint, which is identical to the original complaint with the exception of paragraph 3. (*See* Doc. 5). Paragraph 3 in the original complaint states: "Plaintiff is informed and believes that Lexon Insurance Company ("Lexon'') is a foreign corporation with a principal place of business in Tennessee and is in the surety and insurance business[;]" whereas Paragraph 3 in the Amended complaint states: "Frontier Bonding Services, LLC d/b/a The Surety Group Agency f/k/a Lexon Insurance Company ("Lexon") is a Texas Corporation that may be served through its registered agent, CSC Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701. Its principal place of business is 155 NE 100th Street, Suite 201, Seattle, WA 98125." (Doc. 1 ¶ 3; Doc. 5 ¶ 3). Service of the Amended Complaint was perfected on November 26, 2024. (Doc. 18). The original complaint was never served. (*See* Docket; Doc. 24 at 3).

On January 14, 2025, Defendant Lexon filed the subject Motion to Dismiss. (Doc. 14). After requesting and receiving an extension, Plaintiff responded on February 11, 2025. (Docs. 22, 24; *see* Docket). Defendant Lexon replied on February 25, 2025. (Doc. 27). Thus, the Motion to Dismiss is now ripe for review. *See* M.D. Ga. L.R. 7.31.(A).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face if the complaint alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. The Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs[,]" but the same liberal reading does not apply to legal conclusions. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (citations omitted). "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery[.]" *Iqbal*, 556 U.S. at 678–79.

Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

## DISCUSSION

Plaintiff brings a breach of contract claim against Defendant Lexon, alleging that Defendant Lexon breached the Performance Bond by not completing the work on the Project following Defendant SureCrete's breach thereof. (Doc. 5 ¶¶ 34–41). Defendant Lexon argues that Plaintiff's breach of contract claim against it is untimely under the two-year limitation provision in the Performance Bond. (Doc. 14-1 at 9).

The Performance Bond requires that any lawsuit brought under it be commenced no later than two years after the earlier of: (1) "a declaration of Contractor Default[,]" (2) "after the Contractor ceased working[,]" or (3) "after the Surety refuses or fails to perform its obligations[.]" (Doc. 5-2 at 4). Pursuant to the Performance Bond, Defendant SureCrete is the contractor, Defendant Lexon is the surety, and Plaintiff is the owner of the Bond. (*Id.* at 2). Plaintiff terminated Defendant SureCrete on October 25, 2022 and notified Defendant Lexon of this on the same day. (Doc. 5 ¶¶ 19, 20). Plaintiff does not state when Defendant SureCrete ceased working on the Project. (*See generally id.*). Under the terms of the Performance Bond, Plaintiff had until October 25, 2024, at the latest, to bring this action. (Doc. 5 ¶ 19; Doc. 5-2 at 4). Defendant Lexon argues that the claim against it is untimely because the Amended Complaint "was filed and served after the expiration of the applicable limitations period." (Doc. 14-1 at 5; *see* Doc. 5). Plaintiff argues that its claim against Defendant Lexon is not time-barred because it filed its initial complaint on October 24, 2024. (Doc. 24 at 6–11; *see* Doc. 1).

A federal court in a diversity action "must apply the controlling substantive law of the state." *Cambridge Mut. Fire Ins. Co. v. City of Claxton, Ga.*, 720 F.2d 1230, 1232 (11th Cir. 1993) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Where the "cause of action is created by local law, . . . [i]t accrues and comes to an end when local law so declares." *Ragan v. Merchants Transfer & Warehouse* Co, 337 U.S. 530, 533 (1949) (citations omitted). As such, the issue of when Plaintiff's action against Defendant Lexon was commenced for purposes of the Performance Bond's limitations provision is governed by

Georgia law. *See White v. State Farm Fire & Cas. Co.*, 728 S.E2d 685, 686 (Ga. 2012) (where the Eleventh Circuit certified the question of whether the action was barred by the insurance contract's statute of limitations provision to the Georgia Supreme Court).

In Georgia, "if no service is made, the mere filing of a petition will not suffice to authorize the action to be treated as commenced[.]" *McFarland v. McFarland*, 105 S.E. 596, 596 (Ga. 1921). Although Plaintiff filed its initial complaint on October 24, 2024, the docket reflects that no summons was signed, sealed, or issued by the Clerk. (*See* Docket); *see* O.C.G.A. § 9-11-4(e) ("The plaintiff shall furnish the clerk of court with" "the summons and complaint" and "[s]ervice shall be made by delivering a copy of the summons attached to a copy of the complaint . . . to an agent authorized by appointment or by law to receive service of process."). Moreover, Plaintiff did not request the issuance of summons with the filing of the original complaint as it did when filing the Amended Complaint.[2]

Plaintiff argues that the Amended Complaint relates back to the initial complaint, such that the action was timely commenced. "If perfected service is attempted before the expiration of the statute of limitations but is not made within the five-day period and the defendant asserts insufficiency of service after the statute of limitations expires," service can be timely perfected and relate back to the time of filing if "the plaintiff acts with 'the greatest possible diligence to serve the defendant from that point forward.'" *Arias v. Cameron*, 776 F.3d 1262, 1269 (11th Cir. 2015) (quoting *Moody v. Gilliam*, 637 S.E.2d 759, 761 (Ga. 2006)).

There is no question that the Amended Complaint was timely served pursuant to O.C.G.A. § 9-11-4(c), or that the service processor perfected service within five days of receiving the November 21, 2024 summons and complaint. (*See* Docket). But the Amended Complaint "[can]not relate back since . . . [t]he original complaint was never served." *George v. Southern Ry. Co.*, 218 S.E.2d 447, 448 (1975); *see Stanley v. Cardinal Health, Inc.*, No. 1:20-cv-0750-AT, 2021 WL 9720799, at *1 (N.D. Ga. 2021) (citations omitted);

---

[2] The Court takes judicial notice of the fact that while Plaintiff attached summons to the Amended Complaint, no summons were attached to the original complaint. (*See* Docs. 1, 5-5, 5-6).

*see also Gibson v. TJX Co., Inc.*, No. 4:16-cv-209 (CDL), 2017 WL 455939, at *1. As was the case in *George*, "since there ha[s] been no service of process of the original complaint on the defendant prior to the date of [this Order,] . . . the claim [against Defendant Lexon is] therefore barred[.]" 218 S.E.2d at 448.

## CONCLUSION

Accordingly, Defendant Lexon's Motion to Dismiss (Doc. 14) is **GRANTED**. Plaintiff's breach of contract claim may proceed against Defendant SureCrete.

**SO ORDERED**, this 26th day of September, 2025.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE
UNITED STATES DISTRICT COURT**